**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MEIWU CHEN,

           Petitioner,

    v.

FERETI SEMAIA, et al.

           Respondents.

No. 5:26-cv-1781-DSR

**ORDER GRANTING PETITION AND ISSUING WRIT OF HABEAS CORPUS FOR IMMEDIATE RELEASE**

## 1.    INTRODUCTION

On April 10, 2026, Meiwu Chen ("Petitioner"), a noncitizen who has been detained in Immigration and Customs Enforcement ("ICE") custody since on or about March 25, 2026, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") challenging her ongoing detention as violative of, <u>inter alia</u>, her right to due process. <u>See</u> Doc. No. 1.  The Petition names as Respondents the Warden of the Adelanto ICE detention facility where Petitioner is detained, the Director of the Los Angeles Field Office of ICE, the Acting Director of ICE, the Secretary of Homeland Security, and the United States Attorney General, each in his or her official capacity (collectively "Respondents").  Concurrently with filing the Petition, Petitioner also voluntarily consented under 28 U.S.C. § 636 to have the undersigned Magistrate Judge conduct all further proceedings in this case,

including trial and the entry of judgment.  See Doc. No. 3.  The case became fully consented three days later pursuant to the United States Attorney's Office's General Consent to Disposition by Magistrate Judge in Immigration Habeas Cases.  See General Order 26-05 at Ex. "A" (Doc. No. 5); see also Doc. No. 6.

On April 17, 2026, Respondents filed their Answer to the Petition in which they state they "are not presenting an opposition argument at this time," and "[s]hould the Court enter relief, judgment may be entered, and consistent with the 'expeditious resolution' of § 2241 Immigration Petitions required by the General Order, no more filings or proceedings will be necessary in this matter."  See Doc. No. 8.  Later that day, Petitioner filed a Reply to Respondents' Answer in which she requests a prompt order for her release.  See Doc. No. 9.  The Court has read and considered all papers filed by each side.  For the reasons discussed below, the Court GRANTS the Petition and issues a Writ of Habeas Corpus ordering Petitioner's immediate release from immigration custody.

**2.    BACKGROUND**

   **a.    Factual Background**

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition.  Respondents had the opportunity to dispute the facts alleged in the Petition, but declined to do so.  See Doc. No. 8.  Accordingly, the facts alleged in the Petition are undisputed and have been conceded by Respondents.  See C.D. Cal. L.R. 7-12.

Petitioner is a native and citizen of the People's Republic of China.  Pet. at ¶ 1.  She first entered the United States on or about June 13, 2023, without inspection and was apprehended by immigration officers.  Id. at ¶ 23.  On or around July 6, 2023, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear, which initiated removal proceedings before an Immigration Judge.  Id. at ¶ 24.  On or about July 18, 2023, ICE released Petitioner from custody on parole pursuant to § 212(d)(5)(A) of the Immigration and

Nationality Act ("INA") (8 U.S.C. § 1182(d)(5)(A)).  Id. at ¶ 25.  While on parole, Petitioner filed an application for asylum (currently pending before the Immigration Court), made good-faith efforts to comply with reporting requirements, had a job, and paid taxes.  Id. at ¶¶ 26-27.

On or about February 23, 2026, Petitioner was arrested by the Monterey Park Police Department and charged with violating California Penal Code § 647(b)(1) (misdemeanor prostitution).  Id. at ¶ 28.  She was released by the local authorities later that day and those charges remain pending.  Id.  A month later, on March 25, 2026, she appeared in state court in Alhambra for her arraignment on that charge.  Id. at ¶ 29.  While there, ICE officers detained her and took her personal belongings, including her driver license, Employment Authorization Document (EAD) and Social Security card.  Id. at ¶ 30.  She has remained in ICE detention since that time.  Id. at ¶ 29.  At no time prior to her detention was she given notice that her parole had been revoked or terminated, nor was she given any notice that she would be re-detained by immigration authorities.  Id. at ¶ 31.

### b.    Claims and Relief Sought

The Petition asserts three claims for relief: (1) violation of due process under the Fifth Amendment by revoking her parole and re-detaining her without notice and an opportunity to be heard, (2) violation of applicable regulations governing termination of immigration parole, and (3) deprivation of her statutory right to a bond determination under 8 U.S.C. § 1226(a).  See generally Pet. at pp. 7, 9, 10.

Petitioner seeks a Writ of Habeas Corpus ordering her immediate release from custody and return to the same conditions of her supervision as were in place prior to her detention, return of all of her personal belongings seized when she was detained, and other forms of relief.  Id. at pp. 12-13.

### 3.    LEGAL STANDARD

Habeas relief extends to those who can show they are "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

§ 2241(c)(3).  Although Congress has barred courts from reviewing certain discretionary decisions concerning detention or release of noncitizens subject to removal proceedings, (see 8 U.S.C. §§ 1226(e), 1252(g)), federal courts retain jurisdiction to "review related 'constitutional claims or questions of law.' " Martinez v. Clark, 36 F.4th 1219, 1224 (9th Cir. 2022) (quoting Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011)), vacated on other grounds by ___ U.S. ___, 144 S. Ct. 1339, 218 L.Ed.2d 418 (2024).

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).  "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.' "  Hernandez v. Sessions, 872 F.3d 976, 990 (9th Cir. 2017) (quoting Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011)).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause

provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Mathews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

**4.    DISCUSSION**

**a.  The Exhaustion Requirement**

As an initial matter, habeas petitioners seeking relief under 28 U.S.C. § 2241 generally must first exhaust all available administrative remedies.  See Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012).  However, because this requirement is "prudential" and not a "jurisdictional prerequisite," it is subject to waiver.  Id. at 1045-46; Arango Marquez v. INS, 346 F.3d 892, 897 (9th Cir. 2003) ("[T]he district court properly waived exhaustion, because the exhaustion requirement in § 2241 cases is prudential, rather than jurisdictional.").  Here, Respondents do not assert any failure by Petitioner to exhaust available administrative remedies.  See

5

generally Doc. No. 8.  Thus, any issue of exhaustion is waived.  The Court therefore proceeds to consider the merits of the Petition.

      **b.**      **Petitioner's Detention Violates Due Process**

Petitioner argues that the revocation of her parole and her re-detention without advanced notice or a hearing violates the Due Process Clause of the Fifth Amendment.  Pet. at ¶ 34.  As previously noted, Respondents affirmatively stated in their Answer that they do not oppose the Petition, including Petitioner's due process claim.  See Generally Doc. No. 8.  Consistent with precedent, courts in this Circuit have regarded such silence as a concession.  See e.g., Soleimani v. Larose, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); Singh v. Chiang, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession).  Nevertheless, the Court independently evaluates the merits of Petitioner's due process challenge and concludes that her re-detention violates Fifth Amendment due process.

It is uncontroverted that Petitioner entered the United States in June 2023 without inspection, was thereafter apprehended by ICE, and the following month was released on parole pursuant to INA § 212(d)(5)(A) (8 U.S.C. § 1182(d)(5)(A). See Pet. at ¶¶ 6, 25.[1]  It is also undisputed that since she was released, Petitioner "made good-faith efforts to comply with all reporting requirements" and "worked to support herself, paid taxes, and lived openly and peacefully in the community." Id. at ¶ 27.

---

[1]  The fact that Petitioner was released from custody necessarily means that she demonstrated to the satisfaction of immigration officials that her release would not pose a danger to property or persons and that she was likely to appear for any future proceeding.  See Fernandez Lopez v. Wofford, No. 1:25-cv-1226-KES-SKO, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

Once Petitioner was released from custody on parole, she acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F. Supp. 3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Deprivation of that interest requires due process of law. To determine what process was due, the Court applies the Mathews v. Eldridge framework outlined above. These factors weigh in Petitioner's favor.

### 1.    Private Interest

Petitioner's private interest here is substantial. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process Clause] protects." Id. at 690. Petitioner has a considerable liberty interest in maintaining her life out of custody via Section 212(d)(5)(A) parole. Since being released on parole in July 2023, Petitioner has lived in the United States for more than two years, during which time she filed an application for asylum, "made good-faith efforts to comply with all reporting requirements. . . worked to support herself, paid taxes, and lived openly and peacefully in the community." Pet. at ¶¶ 26-27. In consideration of the

7

guiding principles and relevant authority, the Court finds that Petitioner's interest in remaining at liberty is both substantial and well-established.

### 2.    Risk of Erroneous Deprivation

Regarding the second Mathews factor, the risk of erroneous deprivation here is significant because Petitioner has not been afforded an opportunity to contest the revocation of her parole.  Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community.  Zadvydas, 533 U.S. at 690.  "In releasing Petitioner on humanitarian or significant public benefit parole," the Government "necessarily found Petitioner did not pose a significant flight risk or danger to the community." Medrano-Rocha v. Santacruz, No. CV 26-00404-KK-AGRX, 2026 WL 411355 at *4 (C.D. Cal. Jan. 23, 2026) (citing 8 C.F.R. § 212.5(b)).

Petitioner's arrest and pending criminal charge may constitute changed circumstances justifying revocation of her parole (though Respondents do not argue that point here), but it also may not justify such revocation.  For example, the arrest could have been mistaken, and Petitioner could be innocent of the state charges.  She is, after all, presumed so.  That question, however, is the entire point of requiring notice and an opportunity to be heard before Petitioner was deprived of her substantial liberty interest in her parole release.  A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence.  This is a significant procedural safeguard.  Without written notice, in compliance with 8 C.F.R. § 212.5(e)(2)(i), and a meaningful, individualized hearing, "the risk of an erroneous deprivation of liberty is high because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [her] detention."  Fernandez v. Semaia, No. 5:25-CV-03412-SPG-MBK, 2026 WL 136229 at *5 (C.D. Cal. Jan. 13, 2026).  As one court has reasoned:

> ICE revoked Petitioner's release at a scheduled check-in based solely on internal ATD entries, without prior written notice, without specifying the alleged violations in advance, and without any meaningful opportunity to be heard.  [Citations omitted].  Proceeding on untested contractor and agency records, with no mechanism for explanation or correction, creates a significant risk of error.  Moreover, Petitioner had previously been found suitable for humanitarian parole, which requires that a noncitizen "present neither a security risk nor a risk of absconding[.]"  [Citation omitted].  A brief pre-deprivation hearing would have substantial value in testing both the factual and legal basis for re-detention.

Asad v. Noem, No. 26-cv-620, 2026 WL 775628, at *3 (W.D. Wash. Mar. 19, 2026).  Thus, the second Mathews factor similarly favors Petitioner in this case.

### 3.      Government Interest

Regarding the third Mathews factor, Respondents do not assert any countervailing interest.  Given the pending state criminal charges against Petitioner, Respondents may have a valid reason to revoke Petitioner's parole.  The relevant interest in this prong of the Mathews analysis, however, is not an interest in such revocation, but rather any interest in summarily revoking parole without any notice or opportunity to be heard.  Again, Respondents do not argue they have such an interest.  Thus, the third Mathews factor also favors Petitioner.

The Court therefore concludes that Petitioner's immigration detention, initiated on March 25, 2026, without notice or a pre-deprivation hearing, violated her procedural due process rights.  See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation

adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez, 2025 WL 2959319, at *6 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

### c. Immediate Release Is the Appropriate Remedy

Given this violation of Petitioners due process rights, the Court further concludes that "Petitioner's release is necessary to return [her] to the status quo." Nazarian v. Noem, No. 5:25-cv-2694-KK-ADSx, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025).  The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted).  The last uncontested status here is Petitioner's prior release on parole before her current re-detention.  See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention.").  "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, No. 2:25-cv-8325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Restoring Petitioner to the status quo also means release under the same parole conditions that were in place before the wrongful deprivation of that parole.  For the same reason that Respondents may not revoke Petitioner's parole without affording Petitioner due process, they also may not change the conditions

10

of that parole without affording Petitioner due process.  Return to the status quo similarly means return to Petitioner her personal property and documents seized at the time of her detention.

Finally, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.  See 8 C.F.R. § 212.5(e); see also Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)).  Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty.  Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").  The Court notes that "Respondents are not presenting an opposition argument at this time."  Doc. No. 8 at 2.  Therefore, Respondents have consented to this relief requested by Petitioner.  See C.D. Cal. L.R. 7-12.

11

**d.      Petitioner's Remaining Claims and Requests for Relief**

Because the Court concludes that Petitioner is entitled to release on due-process grounds, it is unnecessary to reach her alternative arguments, including those concerning violations of administrative regulations covering parole and unlawful detention under 8 U.S.C. § 1226(a).  See generally Pet. at pp. 9-12.

Petitioner also requests, in her prayer for relief, that this Court "enjoin [her] removal from the United States without meaningful notice and opportunity to fully present a fear-based claim."  Pet. at p. 13:19-20.  Petitioner has not supported a request for such relief with any facts or legal authorities, however.  Moreover, the Court notes that Petitioner presently has an application for asylum pending before the Immigration Court.  Id. at ¶ 26.  The Court declines to consider Petitioner's request for an order in relation to her potential removal from the United States.

Finally, the Court notes that Petitioner also requested an award of reasonable attorney's fees and costs under the Equal Access to Justice Act.  Id. at p. 13:21-22.  The Court will consider requests for costs and attorney's fees upon compliance with Local Rules 54-2 (costs) and 54-7 (attorney's fees).

**5.      CONCLUSION**

Petitioner is presently in custody of Respondents in violation of the Constitution or laws or treaties of the United States; thus, a Writ of Habeas Corpus should issue pursuant to 28 U.S.C. § 2241 compelling her immediate release.

**IT IS THEREFORE ORDERED** that:

1. The Petition for Writ of Habeas Corpus is **GRANTED**.

2. Respondents shall immediately release Petitioner **MEIWU CHEN** from custody, reinstate her parole under the same conditions that were in place before her detention on March 25, 2026, and return to her all personal property and documents seized from her at the time of her detention.

3. Respondents shall also provide Petitioner with a copy of this Order at or near the time of release.

4. Within two days of the date of this Order, Respondents shall file a status report confirming Petitioner's release and return of her personal property and documents.

5. Respondents are enjoined from re-detaining Petitioner without first providing her with (a) written notice that complies with 8 C.F.R. § 212.5(e)(2)(i), and (b) a pre-detention hearing before a neutral decisionmaker at which Respondents bear the burden of demonstrating that there has been a material change in circumstances justifying revocation of parole and re-detention of Petitioner.

6. Petitioner's request for an order in relation to her potential removal from the United States is DENIED.

7. The Court will issue Judgment consistent with this Order.  Any fee motion must be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412, and this Court's Local Rules.  The Court retains jurisdiction to adjudicate any collateral enforcement issues.

**IT IS SO ORDERED.**

DATED: April 23, 2026                    _____

                                         HON. DANIEL S. ROBERTS
                                         UNITED STATES MAGISTRATE JUDGE

13